Safeway Insurance Company filed this declaratory-judgment action against Wanda Taylor and her daughter Tonetta Taylor, seeking a judgment declaring that an exclusion in a Safeway automobile insurance policy written to cover Mrs. Taylor's 1995 Toyota Tercel operated to relieve Safeway of liability for providing coverage *Page 524 
for an accident that occurred while Tonetta was driving.[1] The Taylors counterclaimed against Safeway, alleging breach of contract, negligence, fraud, and bad-faith refusal to pay an insurance claim. After a bench trial, the court awarded Wanda Taylor $92,500 in compensatory damages and $250,000 in punitive damages; it awarded Tonetta Taylor $3,500 in compensatory damages. Safeway appeals. We reverse and render a judgment for Safeway.
On the day this case was set for trial, the judge entered a default judgment against Safeway at the morning docket call, because it had failed to answer the counterclaim. At trial, the judge stated that the issue of bad-faith refusal to pay was due to be tried.
The testimony reflected that Wanda Taylor purchased the automobile for $15,516 from the Jim Limbaugh dealership on December 11, 1995, and financed the purchase by a loan from World Omni Financial Corporation. The salesman at the dealership referred her to Safeway's agent, Benny York, whom she telephoned before leaving the dealership.[2] Mrs. Taylor testified:
 "I told him [Benny York] that I had just purchased a car, and I need insurance, full coverage insurance on it, and he told me that I would be covered until I got there, but I stated to him that I would have to make a couple of stops because it was getting close to the time for me to get my children out of school, and I had to make a couple of stops before I got to his office."
She said she told York that she wanted "full coverage," because the automobile she had purchased was a "new car" to her. York testified: "I filled out the application personally." Mrs. Taylor initialled the application where York showed her to initial. As part of the process of insuring the automobile, York took a photograph of Mrs. Taylor's car. Sitting in the car were her three children, including Tonetta Taylor, who at the time was 15 years old.
On the afternoon of Christmas day 1996, while Tonetta was driving the car, it was involved in an accident. Mrs. Taylor notified York of the accident. York testified:
 "She reported that there was an accident in her automobile that we had insured. Her daughter was driving the car. I informed her that her daughter wasn't listed on the policy to drive, informed her for future reference to add her daughter or exclude her and that we were not aware that she had a daughter in the household."
Safeway denied coverage on the grounds that because of an exclusion in the policy, the policy provides no coverage while the vehicle is being driven by someone who is under the age of 25 and who is a resident in the household of the insured. The exclusion reads as follows:
"By acceptance of this policy you [Wanda Taylor] agree:
 "4. that the coverages afforded by the policy shall not apply to any loss or damage arising from any accident which occurs while the automobile is being driven, operated, manipulated, maintained, serviced, or used in any other manner by an unlisted driver, on the application or on the endorsement, under the age of twenty-five (25), who resides in the same household as the named insured, or is a regular or frequent operator of any vehicle insured under this policy. This exclusion shall apply whether or not the named insured is occupying the vehicle at the time said driver is using it in any manner whatsoever." *Page 525 
The trial judge held that, as a matter of law, the exclusion Safeway relied upon was "ambiguous" and "grossly misleading." Based upon that holding, the judge refused to enforce the exclusion and held that Safeway had denied payment of Mrs. Taylor's claim without any lawful basis for the denial. The trial judge based his holding upon the fact that the exclusion was placed at the end of the contract; he stated:
 "[T]he entire contract has an `exclusions section' as to each type of coverage. At the very end of the contract is a section entitled `Declarations' which has three declarations as to the binding effect of the agreement. The fourth item, however, is not a declaration, but is an `exclusion' appearing nowhere else in the policy."
Safeway argues that the trial judge erred in holding that the exclusion was ambiguous and grossly misleading and in refusing to enforce it. We conclude that the placement of the exclusion does not make it ambiguous and grossly misleading. The statement is clear and unambiguous. See Safeway Ins. Co. of Alabama, Inc. v.Hambrick, 723 So.2d 93 (Ala.Civ.App. 1998).
This Court first recognized an actionable tort for an insurer's bad-faith refusal to pay an insurance claim, in Chaversv. National Security Fire Casualty Co., 405 So.2d 1 (Ala. 1981). The elements of a bad-faith claim were set out by this Court in National Security Fire Casualty Co. v. Bowen,417 So.2d 179 (Ala. 1982):
 "[T]he plaintiff in a `bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."
Id. at 183.
At trial, Mrs. Taylor testified that she signed the insurance application, including the supplemental document that includes the exclusion, without reading the documents. Apparently, she chose not to read them because she was in a hurry. She also testified that she had retained a copy of her policy and renewal certificates with all of her other important insurance papers. It is undisputed that Mrs. Taylor signed three renewal notices, which she returned with her premium payments to Safeway, and that these notices came to her after Tonetta's 16th birthday. These renewal notices were dated October 7, 1996; November 6, 1996; and December 7, 1996, and they contained the following statement:
 "NAMED INSURED WARRANTS THERE ARE NO OTHER DRIVERS IN THE HOUSEHOLD OTHER THAN THOSE LISTED ON THE APPLICATION OR ENDORSEMENT."
This Court has held that a person who signs a contract document is on notice of the terms therein and is bound thereby, even if he or she fails to read the document. Locklear Dodge City, Inc. v.Kimbrell, 703 So.2d 303, 306 (Ala. 1997). It would impose a punitive result upon Safeway for this Court to determine that a party who chooses not to read a contract *Page 526 
she enters is not obligated by the contract and can ignore any provision that does not suit her. Id.
The trial judge erred in holding that the exclusion was ambiguous and grossly misleading and that Safeway did not have a lawful basis for refusing to pay. It is clear that Safeway had no obligation to provide coverage on the automobile while Tonetta was driving it. The judgment of the trial court is reversed and a judgment is rendered for Safeway.
REVERSED AND JUDGMENT RENDERED.
Hooper, C.J., and Maddox, Houston, See, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] Safeway also named World Omni Financial Group as a defendant; that defendant held a lien on the automobile. World Omni was dismissed from the action and is not involved in this appeal.
[2] Safeway stipulated that Benny York was its agent.